IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROSEANNE SANCHEZ, et al.,

          Plaintiffs,

v.   CIVIL ACTION NO. 2:12-cv-05762

BOSTON SCIENTIFIC CORPORATION,

          Defendant.

**MEMORANDUM OPINION AND ORDER**
**(Motions *in Limine*)**

Pending before the court are the Plaintiffs' Omnibus Motion *in Limine* [Docket 135] and Boston Scientific Corporation's Omnibus Motion *in Limine* [Docket 137]. For the reasons set forth below, the Plaintiffs' Omnibus Motion *in Limine* [Docket 135] is **GRANTED in part** and **DENIED in part** and Boston Scientific Corporation's Omnibus Motion *in Limine* [Docket 137] is **GRANTED in part** and **DENIED in part**.

I.    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are over 70,000 cases currently pending, over 13,000 of which are in the Boston Scientific Corporation MDL, MDL 2326. In this particular case, plaintiff Roseanne Sanchez was surgically implanted with two products manufactured by defendant Boston Scientific Corporation ("BSC"): the Pinnacle Pelvic Floor Repair Kit (the "Pinnacle") to treat pelvic organ prolapse and the

Advantage Fit Transvaginal Mid-Urethral Sling System (the "Advantage") to treat stress urinary incontinence. (*See* Pls.' Mem. in Supp. of Pls.' Mot. for Partial Summ. J. [Docket 63], at 1).[1] The plaintiffs allege that as a result of implantation of the Pinnacle, Ms. Sanchez experienced several complications, including vaginal discharge, painful intercourse, bleeding, pelvic pain, and cramping. (*See id.*). Their complaint alleges the following causes of action: negligence; strict liability for design defect; strict liability for manufacturing defect; strict liability for failure to warn; breach of express warranty; breach of implied warranty; loss of consortium; fraudulent concealment; and punitive damages. (*See* Short Form Compl. [Docket 1]).[2] The instant motions *in limine* involve the parties' efforts to exclude or limit certain evidence, arguments, and testimony at trial.

### The Plaintiffs' Motions *in Limine*

#### a. Motion *in Limine* No. 1 – 510(k) Clearance or Lack of FDA Enforcement Action

The plaintiffs move to preclude any argument, evidence, or testimony relating to the FDA's 510(k) clearance process or lack of FDA enforcement with regard to BSC's mesh products. My reasoning for excluding evidence of the 510(k) process in general is fully set out in *Lewis v. Johnson & Johnson*, --- F. Supp. 2d. ---, No. 2:12-cv-04301, 2014 WL 152374, at *2, *4-6 (S.D. W. Va. Jan. 15, 2014). I will not rehash it here. I will simply describe relevant California law and explain why evidence of the 510(k) process should be excluded in this case.

#### i. California Law

---

[1] The plaintiffs are not pursuing any claims in connection with the Advantage product. (*See* Pls.' Opposition to BSC's Mot. to Exclude Pls.' Experts' Op. that Polypropylene Mid-Urethral Slings are Defective [Docket 112], at 6 n.13).

[2] The claims for manufacturing defect in strict liability, breach of express and implied warranties, and fraudulent concealment have been dismissed. *See Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 4059214, at *1 (S.D. W. Va. Aug. 18, 2014).

In California, a manufacturer or retailer may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product. *Chavez v. Glock, Inc.*, 144 Cal. Rptr. 2d 326, 342 (Cal. Ct. App. 2012) (citing *Soule v. General Motors Corp.*, 882 P.2d 298 (Cal. 1994)). Strict product liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn. *Id.* With regard to design defect, California recognizes the consumer expectation test, which focuses on the product's failure to perform as safely as an ordinary consumer would expect and the risk benefit test, under which a product is defective if its "design embodies an excessive preventable danger." *Id.* at 342-43 (internal quotation marks omitted). Additionally, "the theory underlying a warning defect cause of action is that the product is dangerous because it lacks adequate warnings or instructions." *Id.* at 343. Clearly, the pivotal issue in products liability cases is the safety of the product.

### ii. Absence of Product Defect

First, BSC argues that evidence of compliance with applicable standards is relevant to the issue of whether the product is safe or not safe. However, I have repeatedly held that the 510(k) process does not relate to safety and efficacy of a product; therefore, BSC's argument has no merit. Because 510(k) is not a safety regulation, the case underlying BSC's position is not determinative here. *See O'Neill v. Novartis Consumer Health, Inc.*, 55 Cal. Rptr. 3d 551 (Cal. Ct. App. 2007) (regarding procedures for classifying OTC drugs as drugs generally recognized among qualified experts as *safe and effective* for use).

### iii. Adequacy of BSC's Warnings

Next, BSC contends that the discourse between BSC and the FDA would be helpful to

the jury's understanding of the content of the warnings the plaintiffs now challenge as inadequate. Again, I have repeatedly held that the prejudicial value of evidence regarding the 510(k) process far outweighs its probative value. Accordingly, I reject BSC's argument.

### iv. Punitive Damages and BSC's Conduct

Last, BSC argues that compliance with the FDA's 510(k) process is also relevant to the plaintiffs' punitive damages claims and the reasonableness of BSC's conduct. However, BSC fails to identify any controlling California law that would differentiate this case from previous MDLs. Furthermore, whether or not compliance with non-safety regulations is relevant to punitive damages in this case, I **FIND** that 510(k) evidence is inadmissible because of its potential to confuse the issues and mislead the jury. Accordingly, the plaintiffs' motion *in limine* is **GRANTED**.

### b. Motion *in Limine* No. 2 – AUGS/SUFU & IUGA

The plaintiffs also move to preclude evidence relating to position statements made by the American Urogynecologic Society ("AUGS"), the Society of Urodynamics, Female Pelvic Medicine and Urogenital Reconstruction ("SUFU"), and the International Urogynecological Association ("IUGA"). I have previously denied motions *in limine* as to this issue, and I adopt those rulings here. *See Huskey, et al. v. Ethicon, Inc., et al.*, No. 2:12-cv-05201, 2014 WL 3861778, at *2 (S.D. W. Va. Aug. 6, 2014); *Lewis, et al. v. Ethicon, Inc., et al.*, No. 2:12-cv-4301, 2014 WL 505234, at *2 (S.D. W. Va. Feb. 5, 2014). I explained:

> First, to the extent that the Position Statement is relied upon by an expert witness, it may be admissible under the learned treatise exception to the hearsay rule. *See* Fed. R. Evid. 803(18). Second, under Rule 703, experts are permitted to rely on otherwise inadmissible information provided that they "would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Third, Ethicon's state of mind is relevant to the punitive damages claim, and

> "[a]n out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c)." *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002). Provided that Ethicon properly introduces this evidence, the plaintiffs' motion on this issue is **DENIED**.

*Huskey*, 2014 WL 3861778, at *2; *see also Lewis*, 2014 WL 505234, at *2. Accordingly, in this case, the plaintiffs' motion *in limine* is **DENIED**.

## II. BSC's Motions *in Limine*

### a. Motion to Preclude Any Evidence or Argument Regarding Fraud on the FDA or Alleged Misbranding

BSC seeks to preclude any evidence of fraud on the FDA or alleged misbranding, particularly through the plaintiffs' proffered regulatory expert, Dr. Peggy Pence. The plaintiffs concede that they will not offer evidence of fraud on the FDA or misbranding, including from Dr. Pence. Accordingly, BSC's motion *in limine* is **GRANTED**.

### b. Motion to Preclude Evidence Concerning Material Safety Data Sheets ("MSDS")

BSC seeks to preclude any evidence concerning the Phillips Sumika MSDS, specifically the Marlex Polypropylene MSDS containing a Medical Application Caution ("the Caution"). BSC argues that the MSDS is irrelevant, misleading to the jury, unfairly prejudicial, and would result in an undue delay and waste of time.

I find BSC's arguments wholly unconvincing. First, BSC contends that the plaintiffs should be precluded from offering any evidence related to the MSDS because such evidence is irrelevant to the plaintiffs' claims and will mislead the jury. BSC bases this contention on the deposition testimony of Frank Zakrzewski, corporate representative for Chevron Phillips Chemical Company.

Evidence or argument as to the methods by which BSC acquired polypropylene resin is

5

relevant to both the plaintiffs' substantive claims and claims for punitive damages. *See In re C. R. Bard, Inc.*, MDL No. 2187, 2013 WL 3282926, at *3 (S.D. W. Va. June 27, 2013) (denying Bard's motion *in limine* seeking to preclude evidence concerning the same MSDS); *see also Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 4059214, at *1 (S.D. W. Va. Aug. 18, 2014) (denying BSC's motion for partial summary judgment on the plaintiffs' punitive damages claims). The MSDS served as a notification to BSC of the manufacturer's concerns about the safety of its product for permanent implantation in the human body. Furthermore, the Caution in the MSDS is pertinent to BSC's knowledge of potential safety concerns in its final product.

BSC attempts to bolster its argument by relying on a deposition that is both vague and unclear. BSC contends that Mr. Zakrzewski unequivocally states that the Caution was not added based on any scientific concerns. However, BSC's particular reading of Mr. Zakrzewski's testimony is not an accurate reflection of his opinions. Mr. Zakrzewski clearly indicates he has no knowledge of who wrote the MSDS or why it was written. (*See* Zakrzewski Dep. [Docket 137-3], at 45 ("A: I would say that legal had some input into the MSDS, but I don't know that for certain because I didn't write it. Q: Do you know who wrote the MSDS? A: I do not.")). BSC improperly conflates Mr. Zakrzewski's lack of knowledge regarding scientific testing with a conclusive determination. I have made it clear in this MDL that I find the MSDS to be sufficiently relevant, and BSC's arguments do not change my mind. Accordingly, BSC's motion *in limine* is **DENIED**.

### c. Motion to Preclude Evidence Concerning Polyethylene Material Safety Data Sheets

BSC seeks to preclude evidence concerning the polyethylene MSDS because it is irrelevant. I have previously reviewed an identical motion *in limine* in *Tyree v. Boston Scientific Corp.*, No. 2:12-cv-08633, 2014 WL 5445769, at *2 (S.D. W. Va. Oct. 22, 2014). To the extent that there are differences in fact and exhibits, the court does not find them sufficiently material. In *Tyree*, I ruled as follows:

> BSC explains that BSC employees and consultants responded to questions concerning the polyethylene material safety data sheet ("MSDS") thinking they were responding to questions concerning the polypropylene MSDS. The plaintiffs attempt to highlight the fact that the polyethylene MSDS was written in 2001, three years before the polypropylene MSDS. (Pls.' Omnibus Resp. [Docket 395], at 4). However, BSC clearly states that polyethylene is not a material used in BSC's mesh. (*Id.* at 8; BSC's Reply in Supp. if Its Mot. to Preclude Evidence Concerning Polyethylene MSDSs [Docket 438], at 1). Evidence related to materials not present in the device at issue is clearly outside the scope of the plaintiffs' claims and irrelevant. Accordingly, BSC's motion *in limine* on this issue is **GRANTED**.

*Id.* Therefore, I **ADOPT** my prior ruling on this issue, as stated in *Tyree*, and **GRANT** BSC's motion *in limine*.

### d. Motion to Preclude Evidence of BSC's Procurement of Polypropylene Resin

BSC seeks to preclude evidence of BSC's procurement of polypropylene resin, particularly purchases from a Chinese distributor in 2011. I **FIND** that evidence as to the methods by which BSC acquired polypropylene resin is potentially relevant as to the plaintiffs' substantive claims, as well as claims for punitive damages. However, an evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I simply cannot make a substantive ruling at this time

7

without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* is **DENIED**.

### e. Motion to Preclude Evidence Regarding the ProteGen Device

BSC seeks to preclude evidence regarding the ProteGen device because it is irrelevant, misleading to the jury, unfairly prejudicial, and will result in an undue delay and waste of time. I have previously reviewed an identical motion *in limine* in *Tyree*. 2014 WL 5445769, at *3. To the extent that there are differences in fact and exhibits, the court does not find them sufficiently material. In *Tyree*, I ruled as follows:

> In *Lewis*, I excluded evidence regarding the recall of the ProteGen sling because it would require extensive discussion of the FDA 510(k) clearance process, given that Ethicon used the ProteGen as a regulatory predicate device. *See id.* ("A discussion of the 510(k) process, whether in the context of the clearance of a new device or the recall of a predicate product, presents the danger of unfair prejudice and confusing the jury."). Here, BSC did not use the ProteGen as a regulatory predicate device, a fact that BSC itself points out in its Memorandum in Support. (*See* Def.'s Mem. Supp. [Docket 375], at 12). The ProteGen was a product that BSC developed, sold, and subsequently recalled. (Pls.' Omnibus Resp. [Docket 395], at 7). An evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. The context in which the plaintiffs seek to introduce evidence of the ProteGen is clearly different than that of the Ethicon trial. However, I simply cannot make a substantive ruling at this time without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**.

*Id.* Therefore, I **ADOPT** my prior ruling on this issue, as stated in *Tyree*, and **DENY** BSC's motion *in limine*.[3]

---

[3] This finding is limited by my exclusion of any evidence related to the FDA 510(k) clearance process and enforcement.

8

### f. Motion to Preclude Any Evidence or Argument Concerning BSC's Intent, Motives, or Ethics

BSC seeks to preclude any evidence concerning BSC's intent, motives, and ethics because it is irrelevant, unfairly prejudicial, an undue waste of time, and beyond the scope of the plaintiffs' experts' knowledge. An evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I simply cannot make a substantive ruling at this time without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* is **DENIED**.

### g. Motion to Preclude Any Evidence or Argument Concerning BSC's Decision to Stop Selling Pinnacle or Suggesting that the Pinnacle Was Recalled or Withdrawn

BSC seeks to preclude any evidence of its discontinuation of certain pelvic mesh products, including the Pinnacle. BSC argues that such evidence is irrelevant and has the potential to mislead the jury because it was a business decision, not a recall. The plaintiffs concede that they will not suggest at trial that the Pinnacle product was recalled or withdrawn. Accordingly, BSC's motion *in limine* is **GRANTED**.

### h. Motion to Preclude Any Evidence or Argument Concerning Foreign Regulatory Actions

BSC seeks to exclude any evidence concerning foreign regulatory actions on BSC's pelvic mesh products. BSC argues that such evidence is irrelevant because all of the plaintiffs' BSC products were implanted in the United States. An evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I simply cannot make a substantive ruling at this time without additional

information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* is **DENIED**.

> i. **Motion to Preclude Any Evidence or Argument Concerning BSC's Post-Implant Product Innovations Including LITE Mesh and Colored Mesh**

BSC seeks to preclude subsequent changes or new product lines developed by BSC after Ms. Sanchez's implant date. BSC argues that such evidence is inadmissible as a subsequent remedial measure and irrelevant. Although it appears that BSC's motion has merit, as evidence relating to other devices is outside the scope of the plaintiffs' design defect claim, this issue would be better handled at trial, as evidence is presented. Furthermore, evidence of subsequent remedial measures that is inadmissible to prove "negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction," may be admitted "for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. In other words, the admissibility of such evidence or argument depends on the context and method by which the plaintiffs seek to introduce it. Accordingly, BSC's motion *in limine* is **DENIED**.

> j. **Motion to Preclude Any Evidence or Argument that BSC Owed or Breached a Duty to Warn Ms. Sanchez Directly**

BSC seeks to preclude any evidence that BSC owed or breached a duty to warn the plaintiff directly because in light of California's learned intermediary doctrine, such evidence is irrelevant. In California, manufacturers of prescription drugs and medical devices satisfy their duty to warn if they provide adequate warnings to prescribing physicians, rather than patients. *See Carlin v. Superior Court*, 920 P.2d 1347, 1354 (Cal. 1996) ("[I]n the case of prescription drugs, the duty to warn runs *to the physician*, not to the patient."); *Brown v. Superior Court*, 751

P.2d 470, 477 n.9 (Cal. 1988) ("It is well established that a manufacturer fulfills its duty to warn if it provides adequate warning to the physician."). Accordingly, BSC only owed a duty to warn the plaintiff's physician about the Pinnacle's potential risks to patients. Any evidence or argument that BSC owed or breached a duty to warn the plaintiffs directly is therefore irrelevant, and BSC's motion *in limine* is **GRANTED**.

### k. Motion to Preclude Any Evidence or Argument that BSC Owed or Breached a Duty to Train Plaintiff's Surgeons

BSC moves to preclude evidence that BSC owed or beached a duty to train the plaintiff's surgeon as irrelevant because the plaintiffs have not asserted claims against the implanting physician, and California does not recognize a duty to train a physician. I have previously denied a similar motion in the face of these reasons. In *Tyree*, I ruled that even though West Virginia does not recognize a duty to provide training to physicians, evidence or argument related to physician training might possibly be relevant for some other purpose, depending on the context and method by which it is introduced. 2014 WL 5445769, at *5. I see no reason to deviate from this ruling here. Therefore, BSC's motion *in limine* is **DENIED**.

### l. Motion to Preclude Any Evidence or Argument Concerning Marketing and Promotional Materials Not Seen by Ms. Sanchez or Her Surgeons

BSC seeks to exclude marketing materials not seen by Ms. Sanchez or her implanting physician because they are irrelevant, unfairly prejudicial, and potentially confusing to the jury. I have rejected this argument before, finding that "[t]hese materials *may* be relevant to the plaintiffs' other claims, including negligence and punitive damages. *Bard*, 2013 WL 3282926, at *6 (emphasis added). This finding applies here, where the plaintiffs have claimed negligent design and have asked for punitive damages. Further disputes about relevancy can be addressed

at trial, when the content and proffered use of the materials is apparent. Thus, BSC's motion *in limine* is **DENIED**.

### m. Motion to Preclude Product Complaints, Adverse Event Reports, and Medical Device Reports Concerning Patients Other than Ms. Sanchez

BSC seeks to exclude product complaints, adverse event reports, and medical device reports concerning patients other than Ms. Sanchez because they are inadmissible hearsay and irrelevant. An evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I simply cannot make a substantive ruling at this time without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* is **DENIED**.

### n. Motion to Preclude Any Evidence or Argument that Pelvic Mesh Can Cause Complications Not Experienced by Ms. Sanchez

BSC moves to preclude any evidence that mesh can cause complications not experienced by Ms. Sanchez because it is irrelevant and unfairly prejudicial. Evidence of complications that the plaintiff has not experienced is irrelevant and lacking in probative value. For the claims that require evidence of injury (strict liability for failure to warn, strict liability for design defect, and negligence), only the injuries experienced by the complainant are relevant. Strict liability for failure to warn, for instance, requires the plaintiff to show that the failure to provide an adequate warning of danger was a cause of injury to the plaintiff. *See California Civil Jury Instructions* 9.00.7 (West 2014). Strict liability for defective design also focuses on the plaintiff's injuries. *See id.* 9.00.5 (requiring that the defect in design be a cause of injury to the plaintiff). Similarly, with respect to negligence, the concern is for injuries caused to the claimant. *Id.* 9.19 ("The

negligence of the defendant was a cause of injury and damage to the plaintiff."). Accordingly, evidence that the Pinnacle causes injuries not experienced by the plaintiff has little value. Moreover, elaborating on injuries that the plaintiff did not incur risks "needless presentation of cumulative evidence." Fed. R. Evid. 403. Therefore, BSC's motion *in limine* is **GRANTED**.

### o. Motion to Preclude Any Evidence or Argument Concerning Lawsuits Against Other Manufacturers of Pelvic Mesh

BSC seeks to exclude evidence of lawsuits against other manufacturers of pelvic mesh because it is irrelevant, unfairly prejudicial, and will mislead the jury. Pointing to my previous ruling in *Bard*, the plaintiffs counter that disputes about admissibility of this evidence should be reserved for trial to the extent BSC opens the door on this issue. The use of motions *in limine* that lack specificity and are without context have led the court in the past to defer judgment on several evidentiary issues, including this one. *See Bard*, 2013 WL 3282926, at *2. Having gained greater familiarity, however, the court was confident in substantively ruling on the admissibility of other lawsuits against the same defendant in *Lewis*:

> [E]vidence of lawsuits is generally considered inadmissible hearsay. . . . Further, evidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403. Although other lawsuits may ultimately show that the [product] is defective, the jury must still find that the [product] caused [the plaintiff's] injuries. Evidence of other lawsuits is likely to confuse and mislead the jury from that task, and it is highly prejudicial to [the defendant].

2014 WL 505234, at *6. I find this rationale, as applied to exclude lawsuits against the *same* defendant, to be exceedingly appropriate here, where the plaintiffs seek to introduce evidence of lawsuits against *other* manufacturers. Even assuming evidence about lawsuits brought against other manufacturers has some relevance to the present case, the relevance is dwarfed by the risk

of unfair prejudice posed by requiring BSC to attest for lawsuits in which it was not involved. Accordingly, pursuant to Rule 403, I **GRANT** BSC's motion *in limine*.

### p. Motion to Preclude Any Evidence or Argument Concerning Other Mesh Lawsuits, Investigations, Claims, Verdicts, and Trials Against BSC

BSC seeks to exclude evidence of other mesh lawsuits, investigations, claims, verdicts, and trials against BSC because it is irrelevant, inadmissible hearsay, and unfairly prejudicial. I granted a motion *in limine* in *Lewis* to exclude evidence of other mesh lawsuits against the defendant. *See* 2014 WL 505234, at *5-6. I noted that "evidence of lawsuits is generally considered inadmissible hearsay[,]" and ultimately excluded the evidence on Rule 403 grounds. I explained:

> [E]vidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403. Although other lawsuits may ultimately show that the [product] is defective, the jury must still find that the [product] caused [the plaintiff's] injuries. Evidence of other lawsuits is likely to confuse and mislead the jury from that task, and it is highly prejudicial to [the defendant]. Accordingly, Ethicon's motion on this issue is **GRANTED**.

*Id.* I apply this reasoning to the evidence challenged by BSC here. Therefore, I **GRANT** BSC's motion *in limine*.

### q. Motion to Preclude Any Evidence or Argument Concerning Unrelated FDA Corporate Warning and 483 Letters, All Pertaining to Cardiac Devices

BSC seeks to exclude evidence a 2006 corporate warning and FDA 483 letters concerning unrelated cardiac devices because they are irrelevant, improper character evidence, and unfairly prejudicial. The plaintiffs concede that they will not introduce evidence regarding BSC's correspondence with the FDA. Accordingly, BSC's motion *in limine* is **GRANTED**.

> r. **Motion to Preclude Any Evidence or Argument Concerning Parties' Litigation Conduct**

BSC seeks to exclude evidence of the parties' litigation conduct. An evidentiary ruling on this issue depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I simply cannot make a substantive ruling at this time without additional information. Therefore, a blanket exclusion of such evidence, argument, or testimony would be premature. Accordingly, BSC's motion *in limine* is **DENIED**.

> s. **Motion to Preclude Any Evidence or Argument Concerning BSC's Finances or Employment Decisions.**

BSC seeks to exclude evidence of BSC's net worth, profits, employee compensation and other employment issues because it is irrelevant and unfairly prejudicial. I have previously reviewed an identical motion *in limine* in *Tyree*. 2014 WL 5445769, at *9. To the extent that there are differences in fact and exhibits, the court does not find them sufficiently material. In *Tyree*, I ruled as follows:

> BSC argues that the plaintiffs are attempting to "[paint] [BSC] as a bad actor improperly motivated by profit" and "induce the jury to render a verdict simply because Boston Scientific is a large company with significant resources[.]" (*Id.* at 46–47). I note that I denied BSC's motion for summary judgment on the issue of punitive damages. (*See* Mem. Op. & Order [Docket 425]). Therefore, consistent with my finding in *Bard*, I **FIND** that evidence of BSC's finances or employment decisions may be relevant as to the amount of punitive damages. *See* 2013 WL 3282926, at *15. Furthermore, to the extent that certain financial information "[paints] [BSC] as a bad actor improperly motivated by profit," it may be relevant to the question of liability for punitive damages. *See id.* at 12, 15 (denying Bard's motions *in limine* as to Bard's financial information or condition *and* as to Bard's intent, motives, and ethics). Accordingly, BSC's motion *in limine* on this issue is **DENIED without prejudice**.

*Id.* Therefore, I **ADOPT** my prior ruling on this issue, as stated in *Tyree*, and **DENY** BSC's motion *in limine*.

15

### III. Conclusion

For the reasons set forth above, the Plaintiffs' Omnibus Motion *in Limine* [Docket 135] is **GRANTED in part** and **DENIED in part**, and Boston Scientific Corporation's Omnibus Motion *in Limine* [Docket 137] is **GRANTED in part** and **DENIED in part**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:      February 12, 2015

                _____
                JOSEPH R. GOODWIN
                UNITED STATES DISTRICT JUDGE